BOUND *v.* SOUTH CAROLINA RY. Co. *et al.*

*Ex parte* MITCHELL *et al.*

(*Circuit Court, D. South Carolina.* July 2, 1892.)

1. RECEIVERS—LIABILITIES—COUNSEL FEES.
   The receiver of a railroad employed attorneys, who, after protracted litigation, much reduced the claims of a certain lienholder. Afterwards the property was sold subject to that lien, and the receiver was discharged. The purchasing company recognized the attorneys' claim for fees, and made a payment on account. Afterwards there was another receivership in foreclosure proceedings brought by one claiming under a lien created by the new company. *Held,* that the attorneys had no claim as against the new receiver or the funds in his hands, as the services had nothing to do with keeping the road a going concern; and the recognition of the claim by the new company amounted to no more than a simple contract, which was not entitled to priority to the vested liens created by that company.

2. SAME.
   The fact that the attorneys' services, by reducing the claim of a prior lienholder, incidentally benefited all subsequent lienholders, constituted no ground of priority, in the absence of any contract of employment by them.

In Equity. Suit by Frederick W. Bound against the South Carolina Railway Company and others for the foreclosure of a mortgage. Heard on the petition of Mitchell & Smith for an allowance of counsel fees to be paid by the receiver. Petition denied.

*Julian Mitchell,* for petitioners.

*Saml. Lord,* opposed.

SIMONTON, District Judge. This is a petition to be allowed counsel fees. The question comes up on the report of the special master. One H. T. Coghlan held certain bonds, a first lien on the property of the South Carolina Railroad property. A bill for the foreclosure of a mortgage lien subsequent to that of Coghlan had been filed in this court, and John H. Fisher had been appointed receiver. Pending that suit,

Coghlan instituted proceedings in the state court seeking the foreclosure of his lien. Upon proper application by Fisher, receiver, this cause was removed into this court, wherein all the subsequent litigation was had. This litigation was protracted and vigorously conducted. Coghlan claimed the principal of his bonds, which, before maturity, bore 5 per cent. interest, and he demanded interest after maturity at the rate of 7 per cent. per annum. He also insisted on the current rate of exchange for the pound sterling, instead of the rate of $4.44 4-9 as provided in the subsequent mortgage. These, in all, amounted to many thousand dollars. The cause was twice in the supreme court, (122 U. S. 649; 12 Sup. Ct. Rep. 150,) and its result was the defeat of all Coghlan's demands for increased interest and exchange, confining him to the principal of his bonds, with interest at 5 per cent.; and the pound sterling was estimated at $4.44 4-9. This result reduced the claim of the oldest lien on the property, and to that extent benefited every subsequent lien. Fisher, receiver, had employed the petitioners. When his receivership terminated with the sale of the property and its conveyance to the South Carolina Railway Company this engagement of the petitioners was recognized by Mr. Talmadge, president of the railway company, and he paid them a part of their fee on account. When Coghlan began his suit the South Carolina Railroad Company held property covered by several liens, the one by which his bonds were secured, a first mortgage and a second mortgage, beside judgment creditors. When the railroad property was sold, it was sold subject to the lien under which Coghlan claimed and to the lien of the first mortgage. The South Carolina Railway Company became the purchaser of this property, and, in addition to the liens then existing upon it, created a lien of the first and then of the second mortgage, and a third lien for income bonds. Finally the suit of Bound was instituted for the foreclosure of the second mortgage last mentioned, and in it Hon. D. H. Chamberlain was made receiver. To the suit against the South Carolina Railroad Company, in which Fisher was the receiver, and to the Coghlan suit, the trustees of the first mortgage by that railroad company were parties. To the Bound suit Coghlan was a party, as well as the same trustees of the old first mortgage, the trustees of the first mortgage by South Carolina Railway Company, of the second mortgage, and of the income bond mortgage. The petition and report thereon stated the services of the petitioners, the great advantage derived therefrom by all classes of liens subordinate to Coghlan's claim, arising from its reduction and adjustment, and the petition asks, and the report recommends, that they be paid out of the funds in this case.

Apart from, and without passing upon, the amount recommended, the question which meets us on the threshold is, can the charge be considered in this case? Coghlan's bill was filed August, 1880, and then the petitioners were engaged by Fisher, receiver. That case came to a final hearing in November, 1887, five years after Fisher's discharge, and after the conveyance to the South Carolina Railway Company. It then went into the supreme court, and was confirmed 7th December, 1891. 12 Sup. Ct. Rep. 150. The bill of Bound was filed 7th October, 1889,

and D. H. Chamberlain was appointed 7th October, 1889. The recognition by the railway company in all probability makes this claim good against that company. To make it a good claim against the present receiver it must come within the category of claims for which the courts have provided precedence over vested mortgage liens. Now, claims of this character are confined to instances in which the services, supplies, and material were necessary to keep the railroad a going concern. This is not the case here. But it may be said that these services were in and about a lien antecedent to Bound's lien, and there is no question of displacing that of Bound, or of the mortgage just prior to Bound. There is no authority which gives to the services rendered a lienor the lien of the lienee. The claim for these services is, under the contract, express or implied, with Fisher, receiver. No provision was made in the order for sale in his case for the protection of contracts made with him, nor for their assumption by the purchaser. And if the South Carolina Railway Company recognized and assumed the contract, it was a simple contract on the same footing with all other contracts of that company, and can have no priority over or equality with the mortgage liens represented by the receiver in this case. No claim whatever against the present receiver of the funds in his hands can be recognized. Nor will it avail the petitioners that their services were greatly to the benefit of all the lienholders in this case, reducing largely the first lien, and thus improving theirs. The law on this subject is thus laid down in *Hand* v. *Railroad Co.*, 21 S. C. 162:

"No one can legally claim compensation for voluntary services to another, however beneficial they may be, nor for incidental benefits and advantages to one, following to him on account of services rendered to another, by whom he may have been employed. Before a legal charge can be sustained, there must be a contract of employment, either expressly made or superinduced by the law on the facts."

This is a clear exposition of the law, and is followed. It may be a question as to the right of the petitioners to ask payment in this case from the amount to be awarded to the old first mortgage, known as the "Walker mortgage." The trustees of that mortgage were parties in the *Coghlan Case* and in the case in which Fisher was appointed receiver. How far Fisher may have represented them in his contracts as receiver may be a question. If the petitioners desire to discuss it, they have leave to do so, after proper notice to the trustees of that mortgage or their attorneys.